IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
Case No. 1:24-CV-568-DAB-JGM

| | |
|---|---|
| JAMEY SMITH, on behalf of himself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>THE CAMPBELL'S COMPANY, and SNYDER'S-LANCE, INC.,<br><br>*Defendants*. | **Defendants' Answer and Defenses to Complaint; Counterclaim against Plaintiff Smith** |

Defendants The Campbell's Company f/k/a Campbell Soup Company ("Campbell's") and Snyder's-Lance, Inc. ("S-L") (collectively, "Defendants"), through counsel, respectfully submit their Answer and Defenses to Plaintiff Jamey Smith's ("Plaintiff") Complaint[1] and state as follows:

## FIRST DEFENSE

Defendants deny each allegation of the Complaint not specifically admitted in this Answer, including any allegations contained in the introduction, headings, footnotes, and prayer for relief.

[1] Because Carl Dunst voluntarily dismissed his claims (Dkt. No. 33), this Answer shall only respond to Plaintiff Jamey Smith's allegations.

## NATURE OF ACTION

1. Defendants admit that Defendant S-L is an indirect subsidiary of Defendant Campbell's. Defendants also admit that S-L, among other corporate entities, is part of Defendant Campbell's "Snacks" division. Defendants further admit that S-L manufactures snack food products. Defendants deny the remaining allegations of Paragraph No. 1.

2. Denied.

3. Defendants admit that S-L contracts with independent distributors and distribution companies to provide distribution services in North Carolina and other states. Defendants deny the remaining allegations in Paragraph No. 3.

4. Denied.

5. Denied.

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. Defendants admit that Plaintiff has attempted to bring the above-captioned lawsuit on behalf of himself and "other similarly situated Distributors." Defendants further admit that Plaintiff has attempted to bring the action as a collective action under the FLSA and as a class action under Rule 23. Except as expressly admitted, Defendants deny the remaining allegations of Paragraph No. 11. Specifically, Defendants deny that they have

violated the FLSA or North Carolina law; deny that a collective action under the FLSA is warranted; and deny that a class action under Federal Rule of Civil Procedure 23 is warranted or proper.

**THE PARTIES**

12. Denied; Dunst is no longer a Plaintiff in the instant action.

13. Denied; Dunst is no longer a Plaintiff in the instant action.

14. Exhibit A speaks for itself. Otherwise, denied because Dunst is no longer a Plaintiff.

15. Upon information and belief, Defendants admit Plaintiff Smith is a resident of North Carolina. Defendants deny the remaining allegations contained in Paragraph 15.

16. Denied.

17. Exhibit B speaks for itself.

18. Defendants admit that Campbell's is a New Jersey corporation with a principal business address at One Campbell Place, Camden, NJ 08103. Defendants admit that Campbell's announced it completed the acquisition of S-L and related entities in or around 2018. Defendants deny the remaining allegations in Paragraph No. 18.

19. Defendants admit that S-L is a North Carolina corporation with a principal business address at One Campbell Place, Camden, NJ 08103. Defendants deny the remaining allegations in Paragraph No. 19.

## JURISDICTION

20. Defendants admit that this Court has subject-matter jurisdiction over Plaintiff Smith's FLSA claims pursuant to 28 U.S.C. § 1331. Defendants deny the remaining allegations in Paragraph 20.

21. Defendants admit that the Court has supplemental jurisdiction over Plaintiff Smith's state law claims.

22. Defendants admit that the Court has personal jurisdiction over Defendants relative to the claims asserted by Plaintiff Smith.

## VENUE

23. Defendants admit that venue is proper in North Carolina as to Plaintiff Smith's individual claims. Defendants deny the remaining allegations in Paragraph 23.

## GENERAL ALLEGATIONS

24. Defendants admit that S-L uses a direct-store-delivery model that may involve "deliver[ing] household brand snack products into large retail stores like Walmart and Target." Defendants further admit that delivery involves independent distributors and distribution companies picking up snack food products at local warehouses and delivering them to retail customers. Defendants deny the remaining allegations in Paragraph No. 24.

25. Defendants admit that the listed websites support the cited information as of March 26, 2018. The websites speak for themselves. Defendants deny the remaining allegations contained in Paragraph No. 25.

26. Defendants deny that the listed website supports the cited information. Defendants admit that S-L is a wholesale distributor of various snack food products. Defendants deny the remaining allegations in Paragraph No. 26.

27. Denied.

28. Defendants admit that the listed source supports the cited information as of December 18, 2017. The website speaks for itself. Defendants deny the remaining allegations in Paragraph 28.

29. Defendants admit that Campbell's Form 10-K, published on September 27, 2018, states that on "August 30, 2018, we announced our vision to be a leading snacks and simple meals company[,] and that Campbell's "will continue to focus on the integration of Snyder's-Lance." Defendants further admit that a press release appended to Campbell's Form 8-K, published on March 26, 2018, states that "Campbell has initiated a systematic approach that engages both companies to quickly share key learnings and best practices" and that "Campbell will integrate key control functions, including supply chain and quality, and finance." Defendants further admit that Campbell's Form 10-K, published on September 24, 2020, states that S-L has a "direct-store-delivery model that uses independent contractor distributors[,] and in "order to maintain and expand this model, we routinely purchase and sell routes." Defendants deny the remaining allegations in Paragraph 29.

30. Defendants admit that S-L contracts with independent distributors and distribution companies to transport goods from local warehouses to retail customer shelves. Defendants deny any remaining allegations in Paragraph No. 30.

31. Denied.

32. Defendants admit that independent distributors and distribution companies are independent contractors and conduct distribution services, such as picking up, carrying, and delivering snack-food products to retailers. Defendants deny the remaining allegations in Paragraph No. 32.

33. Defendants deny the allegations in Paragraph No. 33, including but not limited to subsections (a) – (b)(b).

34. Defendants admit only that certain Distributor Agreements permit each party to those agreements to terminate the Distributor Agreement in certain, specifically enumerated circumstances. Defendants deny that the allegations in Paragraph 34 accurately or completely characterize the terms of the Distributor Agreements, and further deny the remaining allegations in Paragraph 34.

35. Defendants admit only that certain Distributor Agreements permit each party to those agreements to terminate the Distributor Agreement in certain, specifically enumerated circumstances. Defendants deny that the allegations in Paragraph 35 accurately or completely characterize the terms of the Distributor Agreements, and further deny the remaining allegations in Paragraph 35.

36. Defendants admit only that certain Distributor Agreements permit each party to those agreements to terminate the Distributor Agreement in certain, specifically enumerated circumstances. Defendants deny that the allegations in Paragraph 36 accurately or completely characterize the terms of the Distributor Agreements, and further deny the remaining allegations in Paragraph 36.

37. Defendants admit only that certain Distributor Agreements permit each party to those agreements to terminate the Distributor Agreement in certain, specifically enumerated circumstances. Defendants deny that the allegations in Paragraph 37 accurately or completely characterize the terms of the Distributor Agreements, and further deny the remaining allegations in Paragraph 37.

38. Defendants admit that to purchase a distribution territory, independent distributors and distribution companies must enter into a Distributor Agreement (and/or other commercial agreements) with S-L (or its predecessors) that sets forth the parties' respective obligations thereunder. Defendants deny the remaining allegations in Paragraph No. 38.

39. Defendants admit only that, pursuant to one or more commercial agreements with S-L (or its predecessors), certain independent distributors and distribution companies have voluntarily agreed to take product on consignment to fulfill their obligations under the applicable commercial agreement(s). Defendants deny the remaining allegations in Paragraph No. 39 and specifically deny that Plaintiff operates on a consignment model.

40. The *Mode* case speaks for itself with regard to the quoted language contained in Paragraph No. 40. Defendants deny the remaining allegations contained in Paragraph No. 40 and specifically deny that Plaintiff operates on a consignment model.

41. Denied.

42. Denied.

43. Denied.

44. Defendants admit that certain retailers direct S-L to directly distribute products to their retail outlet. Defendants deny the remaining allegations in Paragraph No. 44.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

50. Denied.

51. Denied.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

52. Defendants admit that Plaintiff brings the First and Second Counts of the Complaint as a purported collective action under the FLSA and further admit that Plaintiff defines his putative collective of individuals as written. Except as expressly admitted,

Defendants deny the remaining allegations of Paragraph No. 52, including that collective treatment is appropriate and that Plaintiff is entitled to any relief whatsoever.

53. The allegations in Paragraph No. 53 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 53.

54. The allegations in Paragraph No. 54 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 54.

55. Defendants admit only that Plaintiff attached respective documents titled "Consent to Join" as Exhibits A and B to his Complaint. Defendant denies the remaining allegations in Paragraph No. 55, including, but not limited to, any allegation that collective action treatment is appropriate.

56. Denied.

57. Denied.

58. The allegations in Paragraph No. 58 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 58.

59. The allegations in Paragraph No. 59 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 59.

60. Denied.

## CLASS ACTION ALLEGATIONS

61. Defendants admit that Plaintiff brings the Third and Fourth Counts of the Complaint on behalf of the stated putative class of individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure and further admit that Plaintiff defines his putative Rule 23 Class as written. Except as expressly admitted, Defendants deny the remaining allegations of Paragraph No. 61, including, but not limited to, deny that class treatment is appropriate and further deny that Plaintiff or those he seeks to represent are entitled to any relief whatsoever.

62. Defendants admit, upon information and belief, that they possess information sufficient to identify independent distributors and distribution companies that have entered into commercial agreements with S-L (or its predecessors) that set forth the parties' respective obligations thereunder. Defendants deny the remaining allegations in Paragraph No. 62.

63. The allegations in Paragraph No. 63 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 63.

64. Defendants deny the allegations contained in Paragraph No. 64, including but not limited to subsections (a) – (e).

65. Denied.

66. Denied.

## **<u>COUNT 1</u>**
## **Alleged Failure to Pay Minimum Wage under the FLSA**
## **29 U.S.C. § 206(a)(1)(C)**

67. Defendants incorporate their responses to Paragraphs Nos. 1 through 66 above as if fully set forth herein.

68. Defendants admit that "Plaintiffs bring this cause of action on behalf of themselves and the [putative] FLSA Class," but deny that collective action treatment is proper and deny liability. Defendants deny any remaining allegations in Paragraph No. 68.

69. The FLSA speaks for itself. Defendants deny any allegations contrary to the FLSA contained in Paragraph No. 69. Defendants further deny that Plaintiff or any member of the putative class or collective were Defendants' "employees" and therefore deny the remaining allegations contained in Paragraph No. 69.

70. Denied.

71. The allegations in Paragraph No. 71, including Footnote 6, contain legal conclusions to which no response is required. To the extent a response is required, Defendants state that the FLSA and the cited caselaw in Footnote 6 speak for themselves, and Defendants deny any allegations contrary to the FLSA or the caselaw in Footnote 6. Defendants further deny that Plaintiff or any member of the putative class or collective were Defendants' "employees" and therefore deny the remaining allegations contained in Paragraph No. 71.

72. The allegations in Paragraph No. 72 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph No. 72.

73. Denied.

74. Denied.

75. Denied.

**<u>COUNT 2</u>**
**Alleged Failure to Pay Overtime under the FLSA**
**29 U.S.C. § 207(a)(1)**

76. Defendants incorporate their responses to Paragraphs Nos. 1 through 75 above as if fully set forth herein.

77. Defendants admit that "Plaintiffs bring this cause of action on behalf of themselves and the [putative] FLSA Class," but deny that collective action treatment is proper and deny liability. Defendants deny any remaining allegations in Paragraph No. 77.

78. The allegations in Paragraph No. 78 contain legal conclusions to which no response is required. To the extent a response is required, Defendants state that the FLSA speaks for itself, and Defendants deny any allegations contrary to the FLSA. Defendants further deny that Plaintiff or any member of the putative class or collective were Defendants' "employees" and therefore deny the remaining allegations contained in Paragraph No. 78.

79. Denied.

80. Denied.

81. Denied.

**<u>COUNT 3</u>**
**Alleged Violation of the NCWHA**
**N.C. Gen. Stat. §§ 95-25.1, *et seq*.**

82. Defendants incorporate their responses to Paragraphs Nos. 1 through 81 above as if fully set forth herein.

83. Defendants admit that "Plaintiffs bring this cause of action on behalf of themselves and the [putative] North Carolina Class." Defendants deny that the "North Carolina Class" is proper, that class action treatment is appropriate, and further deny the remaining allegations in Paragraph No. 83.

84. The allegations in Paragraph No. 84 contain legal conclusions to which no response is required. To the extent a response is required, North Carolina law speaks for itself, and Defendants deny any allegations in Paragraph 84 that are contrary to applicable North Carolina law.

85. The allegations in Paragraph No. 85 contain legal conclusions to which no response is required. To the extent a response is required, North Carolina law speaks for itself, and Defendants deny any allegations in Paragraph 85 that are contrary to applicable North Carolina law.

86. The allegations in Paragraph No. 86 contain legal conclusions to which no response is required. To the extent a response is required, North Carolina law speaks for itself, and Defendants deny any allegations in Paragraph 86 that are contrary to applicable North Carolina law.

87. The allegations in Paragraph No. 87 contain legal conclusions to which no response is required. To the extent a response is required, North Carolina law speaks for itself, and Defendants deny any allegations in Paragraph 87 that are contrary to applicable North Carolina law. Defendants further deny that Plaintiff or any member of the putative class or collective were Defendants' "employees."

88. Defendants deny the allegations in Paragraph No. 88, including but not limited to subsections (a) – (g). Defendants further deny that Plaintiff or any member of the putative class or collective were Defendants' "employees."

89. Denied.

90. Denied.

91. Defendants admit that Plaintiff seek recovery of their attorneys' fees and costs, as provided by the NCWHA, but deny liability and deny that Plaintiff or any member of the putative class or collective are entitled to any relief whatsoever.

**COUNT 4**
**Alleged Violation of the North Carolian Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1**
**(In the Alternative to Counts 1-3)**

92. Defendants incorporate their responses to Paragraphs Nos. 1 through 91 above as if fully set forth herein.

93. Defendants admit that "Plaintiffs bring this cause of action on behalf of themselves and the [putative] North Carolina Class." Defendants deny that the "North Carolina Class" is proper, that class action treatment is appropriate, and further deny the remaining allegations in Paragraph No. 93.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief sought in his prayer for relief, including each of the following numbered subparts (1) through (9).

## SECOND DEFENSE

Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

## THIRD DEFENSE

Some or all of Plaintiff's claims and/or some or all of the putative collective and class members' claims are barred by the applicable statutes of limitation.

**FOURTH DEFENSE**

Some or all of Plaintiff's claims and/or some or all of the putative collective and class members' claims are barred, in whole or in part, to the extent that such claims have been released, waived, discharged, and/or abandoned.

**FIFTH DEFENSE**

Plaintiff's claims and/or the claims of the putative collective and class members are barred, in whole or in part, because Plaintiff and/or the putative collective and class members were at all relevant times not covered by the FLSA because Plaintiff and/or the putative collective and class members are not employees of Defendants.

**SIXTH DEFENSE**

Plaintiff's claims and/or the claims of the putative collective and class members are barred, in whole or in part, because Plaintiff and/or the putative collective and class members were at all relevant times not covered by NCWHA because Plaintiff and/or the putative collective and class members are not employees of Defendants.

**SEVENTH DEFENSE**

Plaintiff's claims and/or the claims of the putative collective and class members are barred, in whole or in part, because they knowingly submitted to and acquiesced in the obligations and relationship set forth in their Distribution Agreements, from which they have received and accepted financial benefits.

## EIGHTH DEFENSE

Even if Plaintiff or any putative collective and class members were employees of Defendants, which is expressly denied, the claims of Plaintiff and/or the claims and/or damages of some or all of the putative collective and class members are barred, in whole or in part, by one or more exemptions to the federal and North Carolina state laws that form the basis for their claims.

## NINTH DEFENSE

Plaintiff's FLSA claims should be dismissed because Plaintiff does not meet the requirements for a collective action under § 216(b) of the Fair Labor Standards Act.

## TENTH DEFENSE

The case may not be maintained as a collective action because Plaintiff is not similarly situated to, or otherwise an adequate representative of, the individuals Plaintiff purports to represent. Furthermore, the individuals Plaintiff purports to represent are not similarly situated to one another. The claims of Plaintiff fail to meet the necessary requirements for collective certification.

## ELEVENTH DEFENSE

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred in whole or in part because the Complaint is uncertain in that the purported class and collective definitions are vague, ambiguous, and conclusory.

**TWELFTH DEFENSE**

The claims of Plaintiff cannot and should not be maintained on a class basis because the claims fail to meet the necessary requirements for certification, including, but not limited to, numerosity, commonality, typicality, adequacy, predominance, and superiority.

**THIRTEENTH DEFENSE**

Collective action treatment is not proper in this case because substantial individualized determinations are required.

**FOURTEENTH DEFENSE**

Defendant Campbell's, which is not incorporated in North Carolina, and which does not have its principal places of business in North Carolina, is not subject to personal jurisdiction in this Court to the extent any claims are asserted by an opt-in Plaintiff and/or absent class members who either reside or operate distributorships outside of North Carolina.

**FIFTEENTH DEFENSE**

If Plaintiff or any individuals Plaintiff purports to represent were non-exempt employees who worked more than 40 hours in a workweek without overtime pay, which Defendants deny, such hours in excess of 40 were worked without notice to Defendants and were in violation of Defendants' policies and without the knowledge and sufferance of Defendants.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred to the extent that some of the hours claimed are not compensable as "hours worked" under the FLSA.

## SEVENTEENTH DEFENSE

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, because they authorized all complained-of deductions in their Distribution Agreements with Defendants and agreed that they would be responsible for the expenses that they seek to recover.

## EIGHTEENTH DEFENSE

Plaintiff's state law claims are barred because the monies paid to Plaintiff's company do not constitute wages under North Carolina law.

## NINETEENTH DEFENSE

Plaintiff's state law claims are barred because the challenged deductions do not constitute wages under North Carolina law.

## TWENTIETH DEFENSE

To the extent the Court finds that Defendants engaged in any unlawful acts or omissions with respect to Plaintiff or any other individual Plaintiff purports to represent, such acts or omissions were in good faith and intended to comply with the Fair Labor Standards Act and all other wage payment statutes, were justified, proper, and lawful, and were taken/not taken without any intent to violate the Fair Labor Standards Act or any other law and upon reasonable belief that such acts or omissions did not violate any law.

**TWENTY-FIRST DEFENSE**

To the extent any of Defendants' acts or omissions violated the Fair Labor Standards Act, which Defendants deny, Defendants did not know their acts or omissions violated the law, nor did they show reckless disregard for whether their conduct was prohibited.

**TWENTY-SECOND DEFENSE**

Plaintiff's North Carolina common law claim should be dismissed because Plaintiff does not meet the requirements for a class action under Rule 23 of the Federal Rules of Civil Procedure.

**TWENTY-THIRD DEFENSE**

The named Plaintiff lacks standing to assert claims on behalf of putative class and collective members whose circumstances, commercial agreements, and business models differ materially from their own. The named Plaintiff operates under different distribution models, making collective or class treatment inappropriate.

**TWENTY-FOURTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are preempted, in whole or in part, by other applicable federal or state law.

**TWENTY-FIFTH DEFENSE**

Plaintiff has failed to plead and otherwise meet the requirements for pursuing a class action under Rule 23 of the Federal Rules of Civil Procedure, as set forth in Local Rule 23.01.

**TWENTY-SIXTH DEFENSE**

The opt in nature of the collective action is inherently at odds with a Rule 23 class action, and thus Plaintiff's state law claims cannot be brought in the same action as collective claims under the Fair Labor Standards Act.

**TWENTY-SEVENTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, because Plaintiff and/or the putative collective and class members seek to recover duplicative damages based on different theories or arising from the same or similar alleged acts.

**TWENTY-EIGHTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, because Plaintiff and/or the putative collective and class members have not appropriately or adequately mitigated their damages, if any.

**TWENTY-NINTH DEFENSE**

The claims of some or all of the putative collective and class members are barred to the extent that they are subject to mandatory dispute resolution and arbitration.

**THIRTIETH DEFENSE**

The FLSA preempts the NCWHA Minimum Wage, Overtime, and Recordkeeping claims.

**THIRTY-FIRST DEFENSE**

Plaintiff's NCWHA claim and UDTPA claim rise and fall together; because Plaintiff's NCWHA claim fails, the UDTPA claim must fail as well.

**THIRTY-SECOND DEFENSE**

Plaintiff's relationship with Defendants is not conduct in or affecting commerce, and the UDTPA claim thus fails.

**THIRTY-THIRD DEFENSE**

Plaintiff's UDTPA claim fails because the UDTPA does not cover run-of-the-mill employment and compensation disputes, and Plaintiff cannot show that the alleged acts fall within the narrow exceptions to this rule.

**THIRTY-FOURTH DEFENSE**

Plaintiff's NCWHA and/or FLSA recordkeeping claims fail because there is no private right of action for violations of the statues' recordkeeping provisions.

**THIRTY-FIFTH DEFENSE**

Although Defendants deny that Plaintiff is entitled to any relief whatsoever against them, any damages that Plaintiff could recover must be barred or reduced by his failure to mitigate damages.

**THIRTY-SIXTH DEFENSE**

To the extent Plaintiff and any individual Plaintiff purports to represent are entitled to any monetary relief, which Defendants deny, any relief should be set off by funds and

anything else of value such individuals received from Defendants to which they were not legally entitled.

**THIRTY-SEVENTH DEFENSE**

Plaintiff does not have standing because Plaintiff was not a party to his applicable Distributor Agreement in his individual capacity.

**THIRTY-EIGHTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, by the doctrines of laches, unclean hands, estoppel, and/or setoff.

**THIRTY-NINTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, judicial estoppel, and/or by any other applicable doctrine of preclusion or estoppel.

**FORTIETH DEFENSE**

To the extent the Complaint seeks equitable relief, Plaintiff and/or the putative collective and class members are not entitled to equitable relief, insofar as they have an adequate remedy at law.

**FORTY-FIRST DEFENSE**

Plaintiff has failed to plead sufficient facts to establish joint employer liability against Defendant Campbell's under either the FLSA or North Carolina law.

**FORTY-SECOND DEFENSE**

Plaintiff fails to allege facts sufficient to support an award of liquidated damages against Defendants.

**FORTY-THIRD DEFENSE**

Even if Plaintiff were an employee of Defendants, which Defendants deny, Plaintiff and/or other the putative collective and class members are exempt from overtime under the FLSA's Motor Carrier Exemption.

**FORTY-FOURTH DEFENSE**

The claims of Plaintiff and/or the claims of some or all of the putative collective and class members are barred, in whole or in part, because they have not sustained any injury or damage by reason of any act or omission of Defendants.

**FORTY-FIFTH DEFENSE**

If any damages have been sustained by Plaintiff and/or the putative collective and class members, which is denied, Defendants are entitled to offset all payments or benefits made to Plaintiffs and/or the putative collective and class members, as well as all obligations of Plaintiff and/or the putative collective and class members owed to Defendants, against any award that may be entered against Defendants.

**FORTY-SIXTH DEFENSE**

If any damages have been sustained by Plaintiff and/or the putative collective and class members, which is denied, Defendants are entitled to recoup any amounts putative

collective and/or class members unjustly retained based on their status as independent contractors.

**FORTY-SEVENTH DEFENSE**

Defendants reserve the right to assert such additional and affirmative defenses as may be revealed by discovery in this matter.

[INTENTIONALLY LEFT BLANK]

## COUNTERCLAIM

Defendant and Counterclaim Plaintiff Snyder's-Lance, Inc. ("S-L" or "Counterclaim Plaintiff"), by and through its attorneys, asserts the following counterclaim against Plaintiff Jamey Smith ("Counterclaim Defendant Smith"):

## PARTIES AND JURISDICTION

1. S-L is a North Carolina corporation with a principal business address at One Campbell Place, Camden, NJ 08103.

2. Counterclaim Defendant Smith is the owner and operator of Smith Distribution Services LLC ("Smith Distribution"), a North Carolina limited liability company with a principal place of business in North Carolina that entered into a Distributor Agreement with S-L's predecessor, S-L Distribution Company, Inc. and its wholly-owned subsidiary, S-L Routes, LLC.

3. Upon information and belief, Counterclaim Defendant Smith resides in North Carolina.

4. This Court has jurisdiction over the Counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure, as the Counterclaim arise out of the same transactions that are the subject matter of Plaintiff's Complaint ("Complaint") (Doc. No. 1). Specifically, both the Counterclaim and the allegations in the Complaint concern the relationship, if any, between Counterclaim Defendant Smith and S-L, including as it relates to the Distributor Agreement between Smith Distribution and S-L's predecessor, S-L Distribution Company and its wholly-owned subsidiary, S-L Routes, LLC.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as the Counterclaim arises out of the same nucleus of operative facts alleged in the Complaint and is so related to the claims in the Complaint that the Counterclaim forms part of the same case or controversy under Article III of the United States Constitution. Specifically, both the Counterclaim and the allegations in the Complaint concern the relationship, if any, between Counterclaim Defendant Smith and S-L, including as it relates to the Distributor Agreement between Smith Distribution and S-L's predecessor, S-L Distribution Company and its wholly-owned subsidiary, S-L Routes, LLC.

6. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1441(a) because the United States District Court for the Middle District of North Carolina is the federal judicial district where Counterclaim Defendant Smith filed this action, and a substantial part of the alleged events giving rise to Counterclaim Defendant Smith's claims are alleged to have occurred in this judicial district.

## FACTS

7. On or about January 29, 2012, Counterclaim Defendant Smith, acting on behalf of Smith Distribution LLC, executed a Distributor Agreement (the "Distributor Agreement," attached hereto as Exhibit A) with S-L Distribution Company and its wholly owned subsidiary, S-L Routes, LLC, predecessors of S-L.

8. Counterclaim Defendant Smith represented Smith Distribution in entering into the Distributor Agreement.

9. Counterclaim Defendant Smith signed the Agreement on Smith Distribution's behalf.

10. The Distributor Agreement confers on Smith Distribution certain exclusive and non-exclusive rights to distribute certain of S-L's (and other brands') products in a specific geographic territory. Pursuant to the Distributor Agreement, Smith Distribution purchases S-L's products at wholesale prices and thereafter, distributes such products to customers located within that geographic territory and earns income through the resale of those products at higher prices to third-party retailers. Smith Distribution has the freedom to choose how to accomplish those services, including whether to hire workers and how to compensate those workers.

11. Counterclaim Defendant Smith's business has never opted into or signed the Consignment Addendum that would have allowed his business to receive and sell products on consignment. Therefore, Smith Distribution operates on the wholesale buy-sell model. *See* Ex. A at Art. 4A, 4C, 10A.

12. The parties to the Distributor Agreement mutually agreed that Smith Distribution was and is an independent contractor and would provide services under the contract as such.

13. Indeed, Article 2 of the Distributor Agreement is conspicuously titled "**INDEPENDENT CONTRACTOR**" and sets forth several paragraphs memorializing the nature of the contemplated and bargained-for independent contractor relationship.

14. For example, Article 2A of the Distributor Agreement provides that, "[t]hrough this Agreement, the parties intend to, and do, create an independent contractor relationship between them." Ex. A, Art. 2A.

15. Article 2E of the Distributor Agreement provides that Smith Distribution "is, and shall hold itself out as, an independent contractor and shall not be treated as an employee, franchisee, partner, venturer or agent of [S-L] for any federal, state, or local tax, social security, workers' compensation or unemployment compensation purposes or for any other purposes whatsoever." Ex. A, Art. 2E.

16. Consistent with the spirit of an independent contractor relationship, Smith Distribution's right to control his business and personnel is broad. The Distributor Agreement provides that S-L is "interested only in the results obtained under this Agreement," and that Smith Distribution has the right to determine "[t]he manner, means, and methods by which" it achieves those results. Ex. A at Art. 2B.

17. Furthermore, Article 2D of the Distributor Agreement provides that Smith Distribution has the right to obtain, on its own and at its own cost, all of the skills, instructions, employees, resources, equipment, materials, and training needed to perform its obligations and services pursuant to the Distributor Agreement. Ex. A at Art. 2D.

18. Pursuant to the Distributor Agreement, as the owner of Smith Distribution, Counterclaim Defendant Smith has received and has retained the revenue generated through the operation of Smith Distribution.

19. Consistent with the contemplated independent contractor status, Smith Distribution agreed that it would bear all the costs and expenses of operation.

20. For example, the Distributor Agreement expressly states that Smith Distribution agrees to select and maintain all personnel, supervision, and equipment; to exercise its own judgment in making sales to and extending credit to its customers; and to employ persons as it deems necessary. *See generally* Ex. A at Art. 5.

21. As a result of its status as an independent contractor, Smith Distribution enjoys the right to use employees or helpers; select whom to use and decide how and when to use them; and to dictate other details of performance of their work. Ex. A at Art. 5E.

22. Under the Distributor Agreement and as result of its status as an independent contractor, Smith Distribution—and Counterclaim Defendant Smith, as its owner—enjoys the right to engage in any other businesses or professions, including, but not limited to, holding part-time or full-time employment with other entities, or distributing products for other entities (including entities that compete with S-L).

23. As a result of its status as an independent contractor, Smith Distribution has the right to sell all or parts of its distribution rights and retain the net proceeds from such sales.

24. As a result of the contemplated status as independent contractor, Smith Distribution has certain *exclusive* rights to distribute S-L's products within a defined geographic territory, and enjoys the right to determine the amount of product he wishes to purchase from time to time. Ex. A at Art. 4A and 4C.

25. As the owner of Smith Distribution, Counterclaim Defendant Smith receives and retains the net sales revenue generated by purchasing S-L's products at wholesale prices and reselling those products to third-party retail customers – with Smith Distribution controlling the volume of purchases and therefore the scale of revenue Smith Distribution generates. Ex. A at Arts. 4C, 10A. This revenue stream and business opportunity would not be available to Counterclaim Defendant Smith if he were classified as an employee and if Smith Distribution did not have the benefits of this distribution model.

26. As a result of its status as an independent contractor, Counterclaim Defendant Smith has deducted (or has had the opportunity to deduct) on his state and federal tax returns significant sums in business expenses associated with the operation of Smith Distribution.

27. If Counterclaim Defendant Smith had been an employee of S-L, which he is not, Counterclaim Defendant Smith, as the owner of Smith Distribution, would not have enjoyed many of the rights and benefits set forth above, including, but not limited to, retaining the sales revenue earned from the products his business resells under the wholesale model; setting his own schedule, hours worked, and sequence of performing work; controlling the volume of purchases and reselling in which he engages; determining when breaks are taken; deciding which vehicles and equipment are utilized in his distributorship; deciding whether to use employees or helpers for his distributorship, whom to use, and how and when to use them; dictating other details of performance of his distributorship's work; and taking tax deductions for the costs of operating his business.

28. By his actions, including, but not limited to, his retention of the revenue generated by his independent business and his active engagement with the wholesale business model, Counterclaim Defendant Smith acknowledged and agreed to the financial and business arrangement outlined in the Distributor Agreement.

29. On July 10, 2024, Counterclaim Defendant Smith filed the instant putative class and collective lawsuit alleging that, notwithstanding the terms of the Distributor Agreement and the substantial monetary and other benefits he enjoyed therefrom, he (Smith) was treated by S-L as an employee rather than as an independent contractor and that he performed work for S-L "pursuant to [the] Distributor Agreement[]." Compl., Doc. No. 1, at ¶ 52.

30. Despite the substantial revenue Counterclaim Defendant Smith and Smith Distribution have retained (and continue to retain) as a result of their independent contractor status and at the expense of Counterclaim Plaintiff, Counterclaim Defendant Smith now seeks additional payments in the form of overtime compensation, liquidated damages, punitive damages, reimbursement for allegedly unauthorized deductions, other penalties, and attorneys' fees and costs. This claim for relief is based on Counterclaim Defendant Smith's allegation that – despite his representation through Smith Distribution in the Distributor Agreement that it is in fact an independent contractor – that he was an employee of S-L as well as Campbell's.

31. In the event that the Court finds that Counterclaim Defendant Smith should have been classified as an employee of Counterclaim Plaintiff (which it should not),

including that Claimant should be designated or regarded as the "alter ego" of Smith Distribution, the purpose of the Distributor Agreement that Smith Distribution executed would be frustrated, as it was premised entirely on an independent contractor relationship, and should be declared void.

**Count I**

**UNJUST ENRICHMENT**

32. Counterclaim Plaintiff repeats and realleges the allegations of the foregoing paragraphs as if fully set forth herein.

33. S-L has no direct relationship with Counterclaim Defendant Smith. As described above, S-L contracted with Smith Distribution for certain services, and allowed Smith Distribution the freedom to choose how to accomplish those services, including whether to hire workers and how to compensate those workers.

34. To the extent that Counterclaim Defendant Smith attempts to stand in the shoes of Smith Distribution and claims there is no material legal difference between Smith and Smith Distribution, the Court should deny such a claim. However, if the Court concludes that Smith should have been classified as an employee of S-L or otherwise finds in Smith's favor on any of Smith's claims, and that Smith stands in the shoes of Smith Distribution as a sham entity, then Counterclaim Defendant Smith is liable to S-L for unjust enrichment for the reasons stated.

35. Counterclaim Defendant Smith is or was enriched as a result of his ownership of Smith Distribution and Smith Distribution's status as an independent contractor by,

including, but not limited to, retaining the sales revenue earned from the products his business resells under the wholesale model; setting his own schedule, hours worked, and sequence of performing work; controlling the volume of purchases and reselling in which he engages; determining when breaks are taken; deciding which vehicles and equipment are utilized in his distributorship; deciding whether to use employees or helpers for his distributorship, whom to use, and how and when to use them; dictating other details of performance of his distributorship's work; taking tax deductions for the costs of operating his business; serving as an owner of his respective entity and receiving compensation accordingly; enjoying the right to engage in other businesses and professions; and enjoying the right to sell all or parts of his distribution rights and retain the revenue from such sales.

36. Had S-L known that Counterclaim Defendant Smith would be found to be an employee of S-L and/or to stand in the shoes of Smith Distribution as the effective "alter ego" of a purported sham entity, S-L would not have entered into the Distributor Agreement with Smith Distribution, and Smith Distribution – and by extension, Smith as its owner, executive, agent, and/or employee – would not have enjoyed the rights and benefits set forth above.

37. Counterclaim Defendant Smith, as the owner of Smith Distribution, is or was enriched at S-L's expense because, pursuant to the financial arrangement defined in the Distributor Agreement, Smith Distribution customers pay Smith Distribution for the products that Smith Distribution sold. Absent Smith Distribution's status as independent contractor and the enforceability of the Distributor Agreement, S-L would have retained

the rights to sell products to the same customers and thus received revenue from such customers and would have retained other rights and benefits afforded to Smith Distribution as an independent contractor.

38. Absent Counterclaim Defendant Smith's establishment of Smith Distribution and Smith Distribution's status as an independent contractor and the enforceability of the Distributor Agreement, S-L would have retained the rights to all of the revenue from such customers and would have retained the other rights and benefits afforded to Smith Distribution as an independent contractor.

39. As a condition of retaining the benefits received pursuant to the Distributor Agreement, Counterclaim Defendant Smith explicitly agreed that Smith Distribution was an independent contractor, was not entitled to wages, and would pay the expenses associated with operating its business. *See e.g.*, Ex. 1 at Arts. 2A, 2E, 5B, 25B.

40. The Court should find that Counterclaim Defendant Smith and Smith Distribution were properly classified as independent contractors and were not employees of Counterclaim Plaintiff.

41. In the alternative, if the Court concludes that Counterclaim Defendant Smith should have been classified as an employee of Counterclaim Plaintiff, S-L should be permitted (pursuant to the express terms of the Distributor Agreement and otherwise) to declare the Distributor Agreement void and hereby makes such an election under such circumstances. The Court should then conclude that the Distributor Agreement is void, that Counterclaim Defendant Smith entered into the Distributor Agreement in bad faith,

and/or that Counterclaim Defendant Smith was not entitled to the benefits and rights afforded to him (as the owner of Smith Distribution) under the terms of the Distributor Agreement.

42. Upon such a finding, any award(s) to Counterclaim Defendant Smith of some or all of the relief sought in the Complaint would unjustly enrich Counterclaim Defendant Smith at Counterclaim Plaintiff's expense.

43. Specifically, Counterclaim Defendant Smith would be unjustly enriched by receiving damages for wages available to employees and recovering deductions that independent contractors may not recover while still retaining all of the earnings and benefits he received and enjoyed as a result of Smith Distribution's status as an independent contractor, which, if not for that independent contractor status, S-L would have reserved for itself.

44. If the Court finds Counterclaim Defendant Smith should have been classified as an employee of the Counterclaim Plaintiff (which it should not) and, pursuant to this finding, awards him some or all of the relief sought in the Complaint, equity and good conscience require that S-L be awarded the value of earnings associated with Counterclaim Defendant Smith's and Smith Distribution's independent contractor status in order to offset any award of damages, penalties, liquidated damages, punitive damages, interest, and any other liabilities to which Counterclaim Defendant Smith may be entitled as a purported employee.

45. The value of such earnings includes, but is not limited to: (1) revenue and profits Counterclaim Defendant Smith and Smith Distribution generated through the purchase of products from S-L at wholesale prices and the resale of those products to third parties at higher prices; (2) revenue that Counterclaim Defendant Smith and/or Smith Distribution generated through the sale of all or parts of its distribution rights; (3) revenue Smith Distribution generated as a result of enjoying certain *exclusive* rights to distribute S-L (and other branded) products within its geographic territory; (4) compensation Counterclaim Defendant Smith received as a result of having the ability to engage in other businesses and professions and/or hold part-time or full-time employment while operating under the Distributor Agreement; and (5) revenue Counterclaim Defendant Smith retained as a result of tax deductions he was entitled to take solely because Smith Distribution claimed to be an independent contractor, not an employee.

## PRAYER FOR RELIEF

**WHEREFORE**, Counterclaim Plaintiff respectfully requests judgment on its Counterclaim as follows:

1. Dismissing Counterclaim Defendant Smith's Complaint and all claims and causes of action therein with prejudice.

2. In the event the Court finds Counterclaim Defendant Smith should have been classified as an employee of Counterclaim Plaintiff – which it should not –and, pursuant to this finding, awards him some or all of the relief sought in the Complaint – which it should not, (a) a declaratory order stating that Smith Distribution's Distributor Agreement is null

and void and that neither S-L nor Counterclaim Defendant Smith shall have any further rights or obligations under the Distributor Agreement, including, without limitation, any obligation that may exist for S-L to re-purchase Smith Distribution's route or otherwise compensate Counterclaim Defendant Smith or Smith Distribution under the Distributor Agreement; and (b) an award of damages against Counterclaim Defendant Smith, including, but not limited to, any revenue, profits, or earnings retained from the products his business distributed and/or any revenue, profits, or earnings that Counterclaim Defendant Smith retained by virtue of Smith Distribution's status as an independent contractor that exceeds any award of damages to which Counterclaim Defendant Smith may be entitled if the Court deems him to be an employee;

3. A trial by jury;

4. An award of its attorneys' fees and costs; and

5. Any other such relief as the Court may deem just and proper.

Dated: May 19, 2026

*/s/ Christopher C. Lam*
Christopher C. Lam (NC Bar No. 28627)
clam@bradley.com
Robert R. Marcus (NC Bar No. 20041)
rmarcus@bradley.com
Hanna E. Eickmeier (NC Bar No. 54927)
heickmeier@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
Truist Center
214 North Tryon Street, Suite 3700
Charlotte, NC 28202

Telephone: 704-338-6059
Facsimile: 704-332-8858

John P. Rodgers* (TN BPR No. 030324)
jrodgers@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
1221 Broadway, Suite 2400
Nashville, TN 37203
Telephone: 615-252-4642
Facsimile: 615-252-4708
* By Special Appearance

*Counsel for Defendants The Campbell's Company and Snyder's-Lance, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of **Defendants' Answer, Defenses to Complaint, and Counterclaim** was filed electronically using the Court's CM/ECF system, which will send electronic notice to all parties indicated on the electronic filing receipt.

This the 19th day of May, 2026.

*/s/ Christopher C. Lam*
Christopher C. Lam